Case No. 14-5132 et al., District of Columbia and CCDC Office LLC, 13 CA-737 v. Department of Labor et al. Appellant, Metropolitan Regional Council of Carpenters, Unincorporated Labor Organization et al. Mr. Cattell for the Appellant, Mr. Shipley for Appley District of Columbia, and Mr. Baskin for Appley CCDC Office LLC. May it please the Court, I'm John Cattell from the Appellant Staff Civil Division, U.S. Department of Justice, and I'm representing the appellants in this action. City Center D.C. is a vast public-private mixed-use development project that was initiated, authorized, approved, and largely supervised and controlled by the District of Columbia to redevelop approximately 10 acres of prime city-owned land in downtown D.C. There can be no question that D.C. has derived extensive social and economic and infrastructural benefits from this project. Isn't that characteristically the case when there's a, at least in the views of the officials addressing the matter, when a large city development gets city approval? They don't give their approval and say, this is going to be disastrous for the city, right? No, Your Honor. But here they not only, they initiated, basically they called the shots with this project from the outset, and they determined what it would consist of. And it's also, had they done this project directly with a construction contractor instead of going through developers and intermediary, there really could be no question that this would be considered a public work within the meaning of the date. Well, I don't know if anyone can make the changes on such an alternative hypothetical, right? I mean, they built this vast place with apartment houses, office buildings, and so forth, and then they sell it, and I guess they could. And we may assume that that would qualify as a public work. It's never to be occupied by the public at all or by people there under government aegis. It's a good stretch. Well, but Your Honor, it's certainly more than condos. What this project involved was the reopening of the 10th and I Street corridors, which had been closed off by the old convention center, and also the creation of a public park and a public plaza, and the affordable housing. My limited experience as a newspaper reader, those happen all the time in what everyone recognizes as private development. Well, yes, they do. Municipal governments have a powerful hand in modern development. That is correct, and that is one of the reasons why this should be regarded as a public project. Because if you are, you're going over to the position that anything done with such a degree of scrutiny in the district would be covered by Davis paper. Well, certainly it would satisfy the public interest prong, and then the relevant inquiry is whether it's directly by authority of the district within the meaning of the regulation. I don't think SCARA falls without the authority of the municipal government. Right. That's just a recognition of reality. Yes, but there is a world of difference between, say, zoning regulations and the kind of hands-on involvement that the District of Columbia had with this process, which it initiated, and it determined what it wanted, how it wanted. That's probably true of your zoning regulations from 1913, but zoning has evolved a great deal since then. Granted, Your Honor, and of course the definition of public works has evolved since that time as well. That's an interesting question. I didn't see any suggestion that in ordinary parlance such a project as this had ever been called public work. I mean, you didn't offer, certainly not dictionary definitions, whatever they might be worth, or examples from newspapers or magazines or any current examples of language. Well, we certainly cited dictionary definitions that are consistent with this that don't require sort of direct funding by the government of the project in question. And also, this is entirely consistent with the Department of Labor case law that is at issue here, the Crown Point, Fort Drum, and Phoenix. As the district court said, those circumstances were the exact reverse of this circumstance in the sense that the government was leasing the property and then would operate the property once developed. Yes, it is true that they were different in that respect, but the principles, the recognition that the concept of public works was broader, that it entailed projects other than the traditional relationship between the government and a construction contractor building a public building or public work. That applies equally here. Now, just to start with the text of the statute, it does refer to every contract to which the federal government or the District of Columbia is a party for construction of public buildings and public works. And the District of Columbia is not a party to the construction contract. Why is that not the end of the case? It is a party to a contract in which construction is a significant element. It's a party to the lease agreement, but the construction contract is a separate contract between the developer and the builder. The district is not a party to that contract, correct? It's not a party to the contract between the developer and the builder. However, it is a party to the exclusive rights agreement and to the restated development agreement and to the leases with the developer. And those documents all, they contemplate construction that is in excess of $2,000, and that is sufficient to qualify under Davis-Bacon. And the district court in this circuit, in the Turnage case, recognized that principle, that this would satisfy the contract for construction element because in that case, though, the government funds were being paid, passed through, in essence, to pay for the construction. Well, that is correct. And here we don't have government funds going for the construction, correct? You do not have direct government funding. That is correct. However, the developer is obviously benefiting economically from this relationship by virtue of being able to rent the retail and the residential space and to sell the condos. And that is how this project is financed. And had the district done it itself, obviously, it would have paid up front and it would be reaping correspondingly greater economic rewards. But that is why this is a different financial arrangement, but it is functionally equivalent to the relationship or the traditional relationship. But then to take it and pick up on Judge Williams' question, it's functionally equivalent. How is it functionally not equivalent to all sorts of private development that is approved through zoning boards, approved through municipal governments around the country? In other words, what's the limiting principle to this being a pretty massive expansion of Davis-Bacon's coverage? Well, one of the limiting principles is that the project was initiated and essentially controlled by the district from the outset. The district determined exactly what it wants and what it would require in the master plan. Isn't it common for city and local governments around the country to say, we want to encourage development in certain parts of the neighborhood, of the downtown, of certain areas, and we're going to zone for that and seek development of that? Are all those construction projects now going to be covered by Davis-Bacon? No, Your Honor. Your Honor, again, if it's simply a matter of zoning, that would not qualify under Davis-Bacon. But here you have the contractual relationship between the district and the developer that contemplates this massive construction to design what is clearly a public work, to basically redo this prime part of downtown D.C. What about planned unit developments? Excuse me, Your Honor? I'm not familiar with the term, Your Honor. Isn't it the case that the ARB specifically said it wasn't extending this to any project requiring city permits or approvals, and the ARB said that it was distinguishing it in part on the ground that this is a massive project in the middle of downtown, where the land is all owned by the District of Columbia, where there's 1,000-page lease specifying what kind of construction can go on, what kind can't, where that 1,000-page lease includes park available to the population, opening of alleyways, et cetera, and low-cost housing, and where it provides that if construction doesn't meet specific milestones, that the project can be ended. That is absolutely right, Your Honor, and that is the essence of the ARB's holding, and that is why this does constitute a public work. Let me ask you about public work. You didn't mention the KELO case. Isn't that an example in answer to Judge Williams' question of how the words, in that case, public use, but as the other side points out, public works, it's often defined in terms of public use, extends to public-private partnerships? Again, Your Honor, yes, we've emphasized that in our briefs. The KELO stands for this proposition that this is a public use within the meaning of the Takings Clause, but it would apply equally in this context. On the question of contracts for construction, I take it all three of the Labor Department cases all held, they involved leases. In other cases, there was the precedence, the Fort Drum, et cetera, Crown Point, in which the Board found in interpreting the statute that the specific contract itself doesn't have to be with the contractor. It can be about construction as long as it's the city or the federal agency is a part of it. Is that right? Yes, Your Honor. Didn't we so hold an OBRA case with respect to the service contract? Yes. That's exactly what you held in the OBRA case. Those would have been good answers to the questions of my colleagues. Well, thank you, Your Honor. They are in the brief. I agree with that. I don't think you've waived that argument yet. On the limiting principle on page 45 of your opposing counsel's brief, they say a city center where a public work within the meaning of the Davis-Bacon Act and a private tenant at city center who paints his or her office or resident or makes other alterations or repairs exceeding $2,000 would be subject to the act. Do you want to respond to that? Well, Your Honor, we would not necessarily concede that that is true. There's a point at which whatever the action that's being taken is sufficiently ancillary to the contract that it would not fall under the rubric of Davis-Bacon. It would not be controlled by the master agreement. If we're writing the opinion going your way, what is the test to distinguish a situation like that? You said, I think, sufficiently ancillary, which does not give me great confidence as to the clarity of the test going forward. Well, Your Honor, it's hard to specify an exact test, a bright line for that type of situation. Certainly, given the size magnitude of this project and contrasting that with, say, painting the partner's office. Why does the size of the project matter? Because that is what makes this a public work. That is part of what makes this a public work for purposes of Davis-Bacon, that it is so extensive that it involves so many… It was just a question of scale. Well, scale is significant, Your Honor. Size does matter here. Are there any cases supporting that distinction? There are. Again, this… With some of this, it would be quite tiny, a VA clinic. Right. Well, it can be. Certainly, it can be if all we're talking about is a small-scale project. I understand what scale has to do with the painting by a tenant of their apartment. Who does the tenant have a contract with? Well, the tenant would have a contract with CCDC. And does the district's contract with CDCDC say tenants must construct and paint in a certain way the insides of their apartment? No, Your Honor. I don't believe that it… There aren't any specifications about the painting of insides of apartments, is there? No, Your Honor. There are extensive specifications with respect to the broader parameters of the project, which is what I was driving at, but there's certainly nothing reaching down to this level of minutiae. This might be a repeat of something I asked before, but if one lands owned by the government and then leased to a private developer for development and the lease agreement contemplates development by the private developer, will any contract that the developer has with a builder then fall within Davis-Bacon? And if not all of them, how would you distinguish which do and which don't? Well, Your Honor, certainly anything that the developer enters into that is carrying out the mandate of the Davis-Bacon project would fall within it. Okay. And so that's a pretty significant expansion, right, of Davis-Bacon, although I guess you could draw the baseline the other way, and I will when I am talking to the other side, which would be you could argue it's a contraction not to apply it as opposed to that circumstance. But it does seem like Davis-Bacon originally was contemplating, and we know that it was originally contemplating a different scenario than this. Well, Your Honor, certainly in 1931 when Davis-Bacon was enacted, there was a much narrower conception of public works and public buildings generally, and that has evolved over time. And the Supreme Court recognized that in the Irwin case, specifically, which was already 1941. It said that even in the last 12 years the concept had expanded significantly, and since then it has expanded further. But what I meant was the other prong, which is that in the original act and the text of the statute, it's contemplated as the contract between the government and the builder, and what we're talking about here is a contract between the government and the developer and then a separate contract between the developer and the builder, which does not seem covered by the text of the statute, and the question is really whether it's sufficiently similar to draw within the terms of the statute, I suppose. Yes, Your Honor. It's certainly consistent with the literal language of the statute. It's within the fact that it doesn't necessarily, when it says contract for construction in excess of $2,000 to which the federal government of the district is a party, that is certainly consistent with this type with it being a contract that contemplates construction, as this one does that's clearly in excess of $2,000, even though the federal government of the district is not contracting directly with a construction contractor. I mean, I don't mean to push back too hard, but that's not within the literal terms of the statute, that the district's not a party to the contract for construction, right? It's a party to the lease agreement for which, in your words, contemplates construction. Well, it's a party to the exclusive rights, the redevelopment agreement. So there couldn't be any construction without this contract, right? That's correct, Your Honor. So the agency's interpretation of contract for construction is a contract that authorizes construction. Exactly. And without it, there wouldn't be any construction. That's correct, Your Honor, and again, that's the key point, and clearly this is a contract for construction, and it's obviously in excess of $2,000. I'm going to just ask on the question of city permits and stuff, this only applies to the District of Columbia and the federal government, right? The Davis-Bacon Act does, right? Yes. So this would not apply to these kinds of projects in the City of Chicago or any other city? No, unless they're- Just a federal land. Unless they're on federal land. Federal, yeah. Federal land or federal- Going back to my point, I think that if the agreement between the city regulators and the developer were written down in the contract, there would be a revision of this contract. If there's a contract, yes, Your Honor, that's a new L.D. Well, certainly it's consistent with the definition of contract for construction under Davis-Bacon as it's been analyzed by DOL, by OLC, and by a district court in this district. You don't actually have a case where you have neither government funding of the construction nor occupancy of the project by a specific government activity. I'm thinking of the barracks and the VA clinic. There is no case that directly I'd point, Your Honor. That is true. If there are no further questions, I would hope that the Court would give me a couple of minutes on rebuttal. Thank you. We'll hear from the District of Columbia. Good morning, and may it please the Court. Carl Schifferle for the District of Columbia. The District Court got it right. A city center comprising private offices, shops, condos, restaurants is not a public work under the Act. Enacted during a Depression-era federal spending program of public works, the Act is inapplicable because there's no public funding. There's not a public facility in any sense, and there is no primarily public purpose. City centers, like any large commercial development, a private developer with private funds undertakes the entrepreneurial risk of constructing buildings for private interests. Didn't the Supreme Court say that the Howard University Library was a public work in the Irwin case? Yes, Your Honor. In that case, there was public funding. Go ahead. There was public funding. Congress specifically appropriated money for the project. The federal government entered into the construction contract with the builder. The federal government was a party. Howard University is a congressionally chartered university. It has a statutory obligation to serve the general public by providing education. The library wasn't open to the public, right? That was specifically said in the case. Well, I suppose that's correct, but that doesn't negate the points that I was making. It was federally funded. The federal government entered into the contract. Where does the federal funds part come in? Where do you get that? Well, we can look first at the text of the Act. It requires that it applies to contracts in excess of $2,000 to which the district is the party or the federal government.  The lease payments are $2 million. The contract itself, at least literally, is. Certainly, the construction contracts are. In OBRA, didn't we say that that $2,000 limit doesn't mean it has to be in a contract that the government itself signs? In OBRA travel, didn't we say exactly that? Well, what I recall in the OBRA travel case is that the government was paying for the travel. The travel agent was getting a commission, not directly from the government, but it was being paid in effect through the government payment of the travel. I would point to also the ordinary. Yes, it would produce revenue of more than that amount, but the contract itself was a no-cost contract. That specifically was sort of the title of the case. It applies even to no-cost contracts. As long as there are some later, in that case, services worth $2,500 in here, there would be construction worth that much. Where else do you get the words public funds from? Well, there is the text. There is also the ordinary meaning of public work. Where did you get that from, the ordinary meaning of public work? Well, for example, the Peterson case, which the Department of Justice has cited, is a classic definition of public work for Davis-Bacon and other Depression-era statutes. It says specifically among the things that makes a public work is that the government is authorized to extend funds. There's the Code 2 case. Can we pause over that one? That uses the language includes any work. It doesn't say it's limited. And on the second-to-last page of the case, it says, Peterson, as we review the Act here, it includes, A, work done on property belonging to the United States, B, all fixed works constructed for public use at the expense of the United States. This is work done on property belonging to, in this case, the District of Columbia, isn't it? But what is being constructed is not anything that's of the district. That's not what the language of Peterson says. You tell me to look to Peterson, I look to it, and it says work done on property belonging to the United States. Well, I mean, I think the Peterson definition of public work does expressly say that the government is authorized to extend funds. Also, the Code 2 case with the Supreme Court, again, describing the Davis-Bacon Act, they quote it as a directive to federal agencies engaged in the disbursement of public funds. Code 2 wasn't about this issue at all, right? It's about private right of action, and the quotation is actually from Cannon, right? The Supreme Court's decision about what constitutes. Do you have anything else that says it actually defines public work as requiring public funds? When you say about the common language, where did you get that from? Is that your dictionary? Is that where you got it from? Well, we did cite dictionary definitions as well. You cited Black's Law Dictionary, right? Correct. And you think that's an important ground on which the members of Congress may have relied or at least reflected the views of the Congress that wrote it? Well, I think, yes, that's consistent with the ordinary meaning of public work. I would also note, too, that at the time you had the National Industrial Recovery Act, other Depression-era programs where what was occurring was publicly funded public works projects. So if that's the case, why did you cite us to a Black's Law Dictionary of 2014? Well, respectfully, I think that ordinary meaning of public work applies to what Congress intended. It's not just the ordinary meaning. So whatever Black's Law Dictionary said in the 1930s would be the correct definition of it. Is that right? You know where I'm going here, right? Because the definition that's in the Black's Law Dictionary that you cited to us was not the definition in 1933. And the words public funds was not added to that definition until 1999. And in 1933, looking to the very document that you say should count, is works designed to subserve some purpose of public necessity, use, or convenience. And the words public funds are not included. So if we go only by the meaning of public works in Blacks, certainly this provides some purpose of public convenience, doesn't it? Well, no, this does not suffice. This is a private commercial development. It may be true that there are incidental secondary public benefits to that, but that is common to any private development and certainly any large private development to the extent that the Department of Labor, this decision has no limiting principle. As suggested here today, any large commercial development... I'm sorry, I'm struggling on the language before we try to limit things. First on the language, then you would concede that since Black's Law Dictionary does not use public funds in 1933, that that was not the meaning that Congress was requiring in 1933. No, no, I wouldn't concede that. Again, I would point to the text of the statute, which does have an explicit funding threshold, a public funding threshold of $2,000 in the Code 2 decision. There's the structure, the purpose, and the history of the act. Well, that's just on the $2,000, it seems to me that's a separate part of the statute, arguably, which is contract for construction to which the government is a party that exceeds $2,000. That's one part. And the other part is public work or public building. And I'm not sure public work or public building necessarily requires the public funding of the construction as opposed to what the end product of the construction is. Well, it may be that, right, that we can gather the public funding that's required, even if we don't look specifically at the ordinary meaning of public work, but we put it in the context of the act itself, which does have this funding threshold. The structure and enforcement provisions assume the government is spending money. Now, on that, though, what do you do with the lease agreement cases? I guess my first question is, are those correct in your view? Well, we don't need to take issue with the lease. I mean, certainly they're questionable, but we don't need to take issue with them because there were two things there that are absent here. One, public funding, because through the agreement, the upfront agreement, the government was essentially paying the cost of the construction through the guarantee of lease payments, and we had a public facility, something that would be used by the government. In fact, something specifically designed in detail for a specific use by the government. Those two critical facts and essential facts are not present here. But if you stretched just on the first of those two that you identify, if you stretch the literal terms of the language slightly to cover lease agreements in which the government is leasing the property from someone else, why not do the flip side where the government is leasing it to someone else? Yeah, well, I wouldn't want to go down that road. I would point again to the text of the act, which does require that the contract be one to which the district is a party for construction, public works of the district. Right. So what I hear you saying there, and you might not want to say it explicitly, is that those lease agreement cases are on questionable ground. They are on questionable ground, but, I mean, our argument does not depend on invalidating them. We could distinguish them is what you're saying. In fact, I think that they dictate the opposite result because they have as necessary to this holding two things not present here, public funding and it's publicly known. That's not what they say. It's clear that they're distinguished upon their facts, and the Labor Department agrees with that. But the principle that they are all applying is quite clear, that even where the principal purpose of the contract is to lease a facility to be used, the construction of the building is more than an incidental element. Therefore, the contract in question is a contract for construction within the meaning of the Davis-Fagan Act. And surely the construction here is more than an incidental element of the agreement between the development authority and the District of Columbia. Our position is that the contract for construction to which the act applies is between the developer and the builder because it specifies not only what will be built, but also what will be used. So you're not answering the question I'm asking. So you are saying that part of the three precedents of the Labor Board is wrong, right? You have to be saying that. Well, respectfully, no, I don't have to be saying that. Again, our position does not depend on it. To the extent that it is applied to city center, that reasoning, it would be incorrect. There is no limiting principle to this decision. But is that a problem? In other words, the statute applies to federal government projects and D.C. projects. It does not apply to every project around the country that is approved by local government. It is a problem to the extent that this board applies the Chevron test. I mean, we argue it's not applicable at all. But to the extent it applies it, it would be a basis for striking it down under Step 2 of the analysis. But why is that? In other words, I think there's the parade of horribles. This would be a massive expansion. But would it be a massive expansion when these kinds of projects are done now in the place of the traditional Davis-Bacon kind of project that was a government construction contract? Well, it would significantly and adversely affect economic development in the district. Okay. Explain that. Why would it adversely affect economic development in the district? Because you are imposing costs on large private development, or really any private development potentially in the district. You are imposing costs. And by imposing costs, you discourage development. You shift development elsewhere outside of the district. You require that other public benefits of a project be eliminated in order to offset those costs. Well, that's a general argument against the Davis-Bacon Act. That's not right. Well, respectfully, no. The Davis-Bacon Act always raises the costs. Well, for publicly funded contract construction, not for private development. Well, that's really the question here. The government of the District of Columbia could take less in lease payments in exchange, if it felt that, work and negotiate a different kind of deal with a developer. But imagine, I mean, all we have before us is the case where many blocks of downtown District of Columbia are owned by the District of Columbia and are being put to this question. So this is, whatever we decide in this case only need cover that kind of situation. That is certainly not the case with most permitting in the District of Columbia, is it? The government of the District of Columbia doesn't own all the land in the District of Columbia, does it? No, but it is certainly involved in a large degree in private development. The rationale of the Department of Labor's decision is whether there is the public benefits in some manner and there is considerable government authority, then that is a public... Well, all we need to do is uphold this with respect to the facts before us. We don't need to decide whether it would be reasonable if applied where there wasn't public land. I just ask you to take that as a hypothetical. Would that have the same economic impact that you're concerned about in the District of Columbia? Yes. There's a combination both of the District owning the land and a project of the degree of entanglement between the District and the development as there is in this case. Can you give me another example of a project like that in the District of Columbia? Yes. I mean, certainly there are occasions when the government disposes of land for private development or leases as it occurs. You have inclusionary zoning laws which require affordable housing. You have planned unit developments. I'm still asking about the ones where the government owns the land. I know you want to slip into the other, but I'm trying to limit it and see whether there is a limitation here. And, of course, if the government wants this kind of project, it can reduce the lease payments. And if it doesn't care, that is if it's truly private and it doesn't care at all about any public benefits, it can charge max for the lease. That seems to be a choice that the government of the District of Columbia could make, just like the Congress has made a choice that workers will be paid more than they would otherwise be paid on public projects. That has costs. There's lots of policy arguments on both sides of that. We're not here to make those policy arguments. Right. But respectfully, to say that it might be good policy to apply the Davis-Bacon Act here. I'm not saying it's good policy. I'm not judging the policy one way or the other. Okay. But to the extent that you could say, well, it's not an issue because the district could lower its lease payments or eliminate some of the public benefits that the project would otherwise accrue, that respectfully is not the issue. It's whether the act requires it in this particular case. Yes. But you're driving me to this because you're no longer talking about what the act requires, but you're talking about whether there's a limiting principle. So that's why we're talking about limiting principles. If you only look on the face of the statute, you might say it covers everything without any limiting principles. And we have certainly held in other cases, and the Supreme Court has held, that when there's a very broad statute, it's to be interpreted, an agency is entitled to interpret it to the max. And now you're suggesting that we should think of some limits, and I'm trying to suggest some for you. Okay. Well, I would suggest that the Department of Labor has not set any limits. We have suggested which are very reasonable and proper limits, and I think the only reasonable way to interpret the Davis-Bacon Act, and that is that there is public funding, that there is some sort of public facility that is of the district, which means it is used, owned, occupied by the district or the general public, and that there is a primarily public purpose. The incidental benefits, which accrue from private development, are not the sorts of things that implicate the Davis-Bacon Act. This private commercial development is like any other private commercial development where you have private developers selling or leasing to private interests. It's those private interests which are dictating, ultimately, what will be built, because it is for the use of private interests. The reason I was asking about this is because I was curious if the statute could be deemed ambiguous as to whether it applies to something like this, whether it's reasonable in some respect to extend the statute to these kinds of public-private developments. And so I was asking about that, and one of the things you respond with is that it would be unreasonable because it would significantly deter economic development in the District of Columbia. Are there other reasons to think it would be unreasonable or problematic or arbitrary to extend the statute, and I'm loading the dice by using the word extend, but to apply the statute to this kind of situation? Yes. I mean, we do think it is unambiguous under Step 1. Right. Erwin has described the term as plain, Peterson as well, but even if you go to Step 2 and what's unreasonable, yes, I think the fact is, let alone even consult, that this is unprecedented, that never in nearly a century of Davis-Bacon has it been suggested it would apply to a private commercial development like this, that there are these sort of bizarre results that would occur. Because if city center is a public work, then under the statute, any time you alter, including paint, a public work, then Davis-Bacon applies. So a private tenant at city center painting a law firm's office, Davis-Bacon wages would apply. I mean, it's just an illogical consequence of the Department of Labor's statute. And that is horrible because? Well, I think it shows the absurd result. I mean, it can't possibly be that that was what Congress intended. We also have, there are many situations in which the federal government is involved in some way with the use of land, including where, say, and this is what we suggest in our brief, where it leases land for oil, gas exploration. There are facilities. Presumably the federal government considered its status as landowner when it took the position it's taking in this court. Solicitor General balanced all the interests of the federal government, presumably, and they've come down on the side that Davis-Bacon should apply to these kinds of circumstances, even though the federal government will be on the other side of some of these issues. Well, my point is that it's unreasonable. It's unreasonable because never has it been suggested that it was contemplated that the act of applying those sorts of things. I'm not following. Never was it contemplated that the environmental acts would include a bubble concept until the Reagan administration changed the rule in Chevron and the Supreme Court said perfectly okay, a new administration has the authority to make changes. And here, no one has ever addressed this question one way or the other. It's not as if the agency is changing its position even. It is confronted with something it wasn't confronted with before and has decided that the statute is ambiguous and that this applies in this case. A new administration with a different view about the economic development in the District of Columbia or the cost of it or the cost of it to the federal government can take the other position. In fact, it looks like that has happened in the Department of Labor. But so this is not really – this is really a question for the federal government to decide what's in the best interest, and it can change its interest if there's an election. Well, what I was addressing goes to the unreasonableness under Step 2 of Chevron. I think it's a factor that's assuming we even get past Step 1, which I don't believe we do in light of the tax structure purpose of the act. One of the purposes of the act was to prevent the government by using its contracting power and its requirement that it pay the lowest bid for a government construction project, driving down wages below that what private industry pays. But we don't have that concern. That was one of the reasons. But the Supreme Court said in Birmingham, Binghamton, that the purpose really was to raise the wage of workers who are working for the federal government. Can you tell me what you meant by – yeah, go ahead. Oh, but that purpose doesn't apply because if the private developer and the builder, private builder, are setting the cost of the contract, then that is by definition what private industry would pay. So the concern that underlies Davis-Bacon is simply absent. Well, if that's the case, then you're not going to have any additional costs. This is a prevailing wage rate question, right? And the question is whether they're paying the prevailing wages in the local community. Now, if they are already, then you don't really have any standing. What's the issue here? Well, the issue is that the Department of Labor's calculation. Well, there you have another argument, but that has nothing to do with the argument we're discussing today. Well, it's just to address your honest point that the excess cost would be about $20 million. So there is a difference, and that money would be going to labor, right? Yes, but the Department of Labor's position then is that it, at least initially, was that it comes from the district, and the district having not entered into any procurement contract, not having procured anything, not having any appropriations. Let me ask you a remedy question which you have not raised with us, and you can go back to the district. If you were to lose here, you could go back to the district court on that question, but that's not a question before us. Let me ask you about Irwin. I'm a little confused by this. So Irwin is itself not a case under Davis-Bacon, right? That's correct. It's a manual error. Yeah, and that statute says, shall include among other things, among other things, not only the following, among other things, any projects of the character herefore constructed or carried on either directly by public authority or with public aid. It doesn't require public aid, public funding. You've been citing this as a case that makes it clear under Chevron 1 that this statute, a different statute, the Davis-Bacon Act, requires public funding. Well, we don't view that disjunctive, meaning that it's an either-or. I mean, sometimes Congress writes statutes in a redundant way, and we still have to look at what is required by, carried on by public authority, we still have to look at the larger text. So what you're telling me is the or is ambiguous. It could be an inclusive or or an exclusive or. Well, in our view, it's not. Well, I know that's in your view, but the word or can be either inclusive or exclusive, and there's nothing about that sentence that tells. You would use and if that's what you were trying to say in that sentence, wouldn't you? Well, there are a couple of times we've covered the interpretation of public authority directly by public authority. Correct, correct. I don't want to lose the forest for the trees here. I mean, we do have to look at the entire context, and I think in light of that. I'm only asking about Chevron 1 and the clearness of the text that you were talking about. I understand the argument that it affects the context and that it may color other meanings, but I don't see anything in Irwin that makes this a Chevron 1 case. Well, again, in Irwin, Irwin involved a publicly funded works program. That was the project that was publicly funded. But Irwin doesn't say that if it weren't publicly funded, it wouldn't be okay. It just happens to deal with a case that fits within the or. True, but then we also have the concept of carrying on directly by public authority. The direct authority here is exercised by private interests. The government, at most, is exercising indirect authority. It is a type of authority through zoning regulations, construction codes, the requirement that building plans be submitted in order for building permits to be issued, other zoning historic preservation laws. Those are all the types of indirect authority that the government might exercise in a particular case, but that is not sufficient to apply data stake. And I would also want to get to my point that an argument of the rate for Chevron is inapplicable here, that this is not a case where the Congress has expressly or implicitly delegated authority to the Department of Labor to carry out or to make rules carrying the course of law. And so if I – I'm about the section 3145, which says, the Secretary of Labor shall prescribe reasonable regulations for contractors and subcontractors engaged in constructing, carrying out, completing, or repairing buildings, public buildings, public works, or buildings or works. That is the Copeland. That is the provision from the Copeland Act. Yes, but the Department of Labor doesn't – I mean, it cites it, but it doesn't rely upon it, and that's because that – the Copeland Act concerns regulating contractors to prevent kickbacks, so the anti-kickback regulations are authorized by Congress. It does, but this has been incorporated within the Davis-Bacon Act, and in 2002, Congress passed a statute which put it inside the Davis-Bacon Act and said, section 3145 of this title applies to contractors and subcontractors referred to in section 3145 who are engaged in the performance of contracts subject to this chapter. This chapter means the Davis-Bacon Act. I don't see anything in the words. Many times Congress passes new statutes, and they are then applicable to previous statutes. There's nothing in the words of this that says it only applies to kickbacks, is there? I don't think that there was any substantive change intended when it was recodified or the two statutes were put together. You have the Davis-Bacon Act and you have the Copeland Act. The Department of Labor certainly – I mean, it cites to that particular provision. It does not elaborate. The source of its authority that it relies upon in this case is the reorganization plan of 1950. It doesn't actually – I mean, they cite to it. I'm not sure how much they need to say and the amount of briefing space we give both of you, but citing to it seems enough. I don't see why it's a problem. Well, I think it's unfair when the district raises the argument. You responded to it in your brief. It's not like you didn't respond to it. You responded to this argument. It's not unfair in what sense? No. Well, I mean, if I recall, the argument wasn't really developed until the reply brief. What I recall, the opening brief was a very short couple sentences, maybe at most. What is your response other than it's part of the Copeland Act, which I knew you were going to say, and I must have known that because I think you said it in your brief. Well, I mean, I would like the opportunity to look back at the legislative history of how it was ultimately codified. I think that's fair, and if you want to submit something by the end of next week, that will be fine. Okay. I would appreciate that. Independent of the Copeland Act or the reorganization plan, we don't think the reorganization plan itself is a source of authority. It's executive. It's not legislative, actually. It didn't authorize the creation of any new functions. What about our own opinion in the Copper case? Yeah, the Copper case, it doesn't address the issue here. I mean, it simply, in our view, said that, well, the contracting agency had the authority to do what the Department of Labor did, so it's okay for the Department of Labor to do it, but that doesn't address the question of whether there was this congressional delegation of authority to enact rules bearing the force of law, and, in fact, the plan, in our view, could not have created such authority because the reorganization act did not permit that. It merely allowed transfer or coordination of agency functions, not the creation of any new power or function, and, in fact, the plan itself merely coordinated. It did not transfer from the contracting agency the administrative and enforcement responsibility under the act. We also have, as a separate ground, the fact that there are multiple agencies involved in the administration and enforcement of the act. That's the type of situation in which Chevron deference does not apply, where you have the shared responsibility. There's only multiple agencies with respect to enforcement. All those three cases, in fact, all the precedents from the board are all cases of other agencies going to the board and asking to overturn the Department of Labor's interpretation of the Davis-Bacon Act, right? Those are cases, right, yes. So your view is that the agencies could have just ignored the Department of Labor, and, in fact, those cases just shouldn't have been there in the first place. Is that right? No, no. It's a separate question of whether that ultimate decision by the Department of Labor, when it gets to the court and the court reviews that decision, whether Chevron deference applies. I mean, that's a separate question, and because the contracting agencies have authority, because the Department of Justice itself said that it has the ability to interpret the act contrary to part of the act. Why go to the board at all, then, if they can just ignore the board? Can they ignore the board? Can the agencies ignore the board? The federal agencies, in those cases, I mean, that's a matter for internal executive administration. It's not, in our view, a question of Congress. Well, it looks like a bunch of precedents in which the agencies think the opposite of what you think, namely that they have to go to the board. What about your own concession that the DOL clearly has jurisdiction here? Did you make a concession below in a letter to the agency saying that we think that this is your letter of May 27, 2009, to the Department of Labor, waging our administrator, the terms public buildings and public works are not defined in the Davis-Bacon Act, but are defined in regulations of the Department of Labor as follows. Although this definition speaks of a federal agency, is it clear that it also applies to the district? That's something that the deputy mayor wrote in a letter. It is, you know, to the extent that the terms or the definition of the regulation might apply and the district might explain why that applies. It doesn't say might apply. I mean, it says that it's clear it also applies to the district. You had a different view of the meaning of the regulation, but you agreed that the regulation applied to the district. Yeah, but that is a separate question. Well, no, I mean, I disagree that we were conceding for some later proceeding the issue of Chevron. Did you challenge the authority of the Department of Labor to rule on this question and to make a final ruling on the question? We were willing to, bound by the department's decision, subject to judicial review, and, of course, at the judicial review stage, that's when the issue of Chevron deference arises. It doesn't arise for us. Well, if the agency has authority to adjudicate, normally, under me, we say that's Chevron deference. If the agency has the authority to make adjudications, which it interprets the meaning of the statute and regulations, that's sort of classic. That and regulations themselves are sort of the classic situations where we give Chevron deference. Right, but the premise there is that the Congress has delegated or implicitly delegated the authority to make rules carrying the force of law, and simply because there's a procedure for the internal administration of the government, that's something different from rules carrying the force of law. I would also point out that the regulation merely parrots the case law. The department's regulation comes from the Irwin decision. Well, I looked at Irwin. It doesn't look like it's the same at all. It looks like they're relying in part on analogy to an IRA, not to the decision. But I do have a question. What about all our cases where we give Chevron deference to the Department of Labor's interpretation? What do we do with those? Well, I think those cases are distinguishable, first, because they involve other subject matters, like the Copeland Act or the related provision in the Davis-Bacon Act, where the contractor has to make the payments without subsequent deduction or rebate, or they involve the Secretary of Labor's setting of the wages, the wage rates. I mean, those are subject matters upon which the Department of Labor does have authority but does not have wholesale authority to make rules carrying the force of law under the Act, and particularly with respect to the coverage of the Act and how the term public work is interpreted. I don't think the issue of Chevron deference was even contested in those cases, I would point out, and I think finding precedent has required it. Do you know that to be the case? Because all of our decisions of our court all rely on Chevron expressly. Yeah, I should have said the applicability of the Chevron test was not at issue or specifically contested from what I recall of reading those decisions. That is, whether Congress had delegated authority to enact rules carrying the force of law, and maybe that's because the subject matter was different, as I indicated, that involved the Secretary of Labor setting the wage rates. That is something we're not disputing. Well, Ms. Dick involved the words, other bona fide or fringe benefits, which are words in the Davis-Bacon Act, and this is a very similar place to these words. Well, that is part of the wages. In fact, the fringe benefits are included in the definition of wages, so that is part of the Department of Labor's wage rate setting authority. This is a different type of authority which the Department of Labor is exercising here. It's the coverage of the Act. It's determining what project constitutes public work under the Act. We submit there has been a congressional delegation of authority with respect to that, and there is also the point that the regulation defining public work can't be read any other way than excluding the district from the definition of public work. It only applies to federal agencies. And it may be true that we allow the Department of Labor to adjudicate it, but when we get to court, and we always reserve the right to judicial review, when we get to court, we have the right, I think, to argue then that the test itself simply doesn't apply, and it's for the reasons that they gave. My colleagues have an answer to the question. And I know Mr. Baskin is available for those questions as well. Thank you. Thank you. We just went 22 minutes over. Can there be anything that he didn't say? Well, I would like to correct what I think is a fundamental misconception about the city center project. I've heard it described as vast, massive, unique. It's none of those things. It's a project not unlike many others that have been built under land disposition agreements in which the district disposes of property that by statute has to be property no longer serving a public purpose. If you go over to city center and you needed to find restaurants and shop at the fine stores, it's clear this is not something that Congress intended when it passed a law for the disposition of spending of public funds to build bridges, dams, or military housing or veterans clinics, none of those things. There has never been a case like this in which the act has been extended this far. It has been stretched, but you are breaking it. Don't kid yourself. This is the most radical expansion of the act that has ever occurred if you allow it to affect this project. And there are many projects. We cited a number in our briefs in which the district has disposed of land. I heard it referenced this is owned by the district. A 99-year lease under District of Columbia law is the equivalent of a fee-civil disposition. So the district is not, for all practical purposes, owning this land. I tell you, that's not how people are going to feel in the 90th year. There are a number of places in the area around here where there were 99-year leases, and now suddenly people are suddenly coming to grips with the fact that they're no longer going to own their condominium, their co-op, et cetera, right? But very entirely speculative of what's going to happen. We don't know if the buildings are still going to be there in 99 years. So to make assumptions about what does Davis-Bacon, which is supposed to be about the government spending money to build things, apply for a public purpose, a public worth. Is it supposed to be, did Congress intend to use it to apply to a Louis Vuitton or a nice restaurant? I won't name more names, but these are entirely. I think the district court referred to it. I mean, it does not make sense. And we ask you to use your common sense. Thank you. Question? Okay. The government. Well, since the other side went considerably over, we'll give you five minutes. Thank you, Your Honor. A great launch into your discussion. I noticed that your grave reef does not refer to the Mineral Leasing Act, much less the Hard Rock Mining Act, which are two instances where the government indisputably owns the property and maintains very detailed control over the way in which it is developed. And for the case of the Hard Rock Mining Act, since the enactment of Davis-Bacon, the Mineral Leasing Act, 95 years, I don't believe Davis-Bacon has ever been thought to apply to those. We're talking of thousands of leases and other transactions. Thousands. Your Honor, I apologize. I'm really not in a position to. Well, it was cited in your adversary's brief as what your theory would take the world to. And you seem to resist the thought of contemplating the implications of your reading, but why not? Well, I would hope that we would have a chance to address that. That's what's called a reply brief. Well, yes, Your Honor, but of course, our words here were very limited, and we had to pick and choose what we would address. Well, now you have. Ms. Garland's given you another 22 minutes. No. So don't hold back. Have you got any? I mean, presumably this was considered when you appealed, that the interests of the federal government are going to be on both sides of this issue. Yes, Your Honor, certainly that's. So you presumably have an answer to does this act apply to all these federal projects under various statutes that give federal government power to dispose of property? And if not, why not? The things you point to, a public purpose done under the authority of the government, no government funds, government property, everything's present in those cases. I'm reluctant to address that, just as Mr. Schifferle was reluctant to address the 3145 issue without an opportunity to do so in writing, because it was not the focus of our argument or the ARB decision. Well, it's my point, if I may, sir, that your government opportunity, actually, Mr. Schifferle, is involved on that. Well, it looks like we're going to get some more briefing here. All right. Letters. Letters. Letters. Letters. Letters. Letters. 28 days. I think we call them. When will you be able to do this? I'll tell you, I gave Mr. Schifferle until the end of next week for his. I could do that again for you, but then Mr. Schifferle needs another week probably to respond himself. Does that seem fair to the parties? Well, will we be addressing both? You can address the oil leasing question and the mining question. In your defense, the Hard Rock Mining Act was not mentioned in the brief, but the oil leasing was, so you guys should get right on it. Oil and gas. Oil and gas and hard rock mining. Oil and gas and hard rock mining, yes, Your Honor. Any other questions? Okay. Do you have something more you want to say? Yes, sir. I had a number of points. Most of them have been addressed in the colloquy between the court and counsel and in our briefs, but there are a number of things that I would want to reiterate. First, I would point out that the district did not dispose of this property, as Your Honor pointed out. This is a lease, and D.C. owns this property, and it will revert to D.C. at the end of the lease, and the plaintiffs are obligated, CCDC is obligated to maintain this in first-class condition, so this is not a case where the – What's that relevant to? Well, it's relevant to Mr. Baskin's point that this is – that basically D.C. has given this away. That is not the case. Does that affect our – It remains government property, and it's government property on which – Does that affect our interpretation of public work? Is that what you're saying? Yes, it does. Or how is it relevant? I'm trying to figure out how what you're saying is relevant. Before you get too diagnostic, I remember that clearly. Well, I don't really – again, I feel – I think we should let you go and contemplate these questions. I think that you can see that this is an important question to the panel, and I think to Kevin's point, which is, is the United States actually making this decision about this, suggests that you need to go a little higher up in the hierarchy and make sure that the United States actually – Well, to appeal, presumably the Solicitor General had to approve, so I'm presuming this was already considered. The Solicitor General certainly didn't have authorized the appeal. Well, you may want to address with the Solicitor General or however the hierarchy now works what the position of the government would be with respect to whether there's a place to limit it from a mineral and a hard rock leasing. I will do so, Your Honor. There are just a couple of points that I would like to make in reply. It's extremely incongruous for the district to be arguing that this is not – that it's using public property here for what is primarily a private benefit or private purpose. That really sort of – it doesn't – it's not what one expects of a government authority. What do you mean by that? Well, for the district to be saying that it's using public land primarily for private purposes and private benefit, that really seems to be unusual for a government authority. The district believes that a prosperous downtown is in the district. Right. But that, of course, that plays into the notion of a public work and why there is a public benefit here. The concept of public work, which is unlimited, unbounded. It is common, just on your point, for mayors and the like to say that they want to facilitate private development to make the city a better place. Right, that it's facilitated, but that is occurring under the aegis of public authority, and that is why there is direct authority within the meaning of Davis Bay here. That does go to Judge Williams' point. I guess it cuts both ways. Yes. Also, it's clear that the Department of Labor has primary authority to regulate under the Davis-Bacon Act, both under 40 U.S.C. 3145, which we did cite a couple of times in our brief, and also under reorganization plan number 14 of 1950. And the cases, as Judge Garland pointed out, the cases where multiple agencies were involved are readily distinguishable because they did not have primary authority. Also, the public benefit here is not incidental. It's at the very heart of this project. And I think that, well, in closing, also the city of Arlington establishes that the fact that something that is a so-called jurisdictional question within the meaning of Chevron doesn't mean that it's outside of Chevron. Even questions of authority are covered within the Chevron doctrine. So if there are no further questions, I'd urge the Court to reverse and we will address the questions that the Court has raised. We'll issue an order with these schedules so everybody will have it hopefully by the end of the day. Thank you both very much. Very good and interesting argument.
judges: Garland, Kavanaugh, Williams